**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **EMILIANO NIETO ZEPEDA, ALAN YAIR DOMINGUEZ GALLERES, LUIS GUZMAN, and SERGIO ALARCON MENDOZA Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**BAGGIO LTD., MARIO FAVA and TARCISIO FAVA, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Emiliano Nieto Zepeda, Alan Yair Dominguez Galleres, Luis Guzman and Sergio Alarcon Mendoza (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

## NATURE OF THE ACTION

1.      Plaintiffs are former bussers and runners at Defendants' Italian restaurant located in Scarsdale, New York.  While working for Defendants, Plaintiffs were subjected to a litany of wage and hour violations under federal and state law, including: unpaid minimum wage, unpaid overtime premiums, unpaid spread-of-hours premiums, and unpaid gratuities.  Plaintiffs also did not receive wage notices or accurate wage statements, as required by the NYLL.

2.      Plaintiffs bring this action to recover unpaid minimum wage and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums, improperly withheld gratuities, and for failure to provide wage notice and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all non-management employees of Defendants in New York.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.      In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because one of Defendants' businesses is located in this district.

7.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§

2201 and 2202.

## THE PARTIES

**Plaintiffs:**

8.    <u>Plaintiff Emiliano Nieto Zepeda</u> ("Nieto") was, at all relevant times, an adult individual residing in Westchester County, New York.

9.    <u>Plaintiff Alan Yair Dominguez Galleres</u> ("Dominguez") was, at all relevant times, an adult individual residing in Westchester County, New York.

10.    <u>Plaintiff Luis Guzman</u> ("Guzman") was, at all relevant times, an adult individual residing in Westchester County, New York.

11.    <u>Plaintiff Sergio Alarcon Mendoza</u> ("Alarcon") was, at all relevant times, an adult individual residing in Westchester County, New York.

12.    During the relevant time period, Plaintiffs performed work for Defendants at Moscato Restaurant, located at 874 Scarsdale Avenue, Scarsdale, New York 10583.

13.    Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

14.    Baggio, Ltd. is an active New York corporation doing business as "Moscato Restaurant" ("Moscato" or the "Corporate Defendant") with its principal place of business located at 874 Scarsdale Avenue, Scarsdale, New York 10583.

15.    Mario Fava ("M. Fava") is an owner and operator of the Corporate Defendant.

16.    Tarcisio Fava ("T. Fava" and, collectively with M. Fava, the "Individual Defendants" and collectively with the Corporate Defendant, the "Defendants") is an owner and operator of the Corporate Defendant.

17.     Upon information and belief, the Individual Defendants set the Corporate Defendant's payroll policies, including the unlawful practices complained of herein.

18.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally in their direction and control of Plaintiffs and the Corporate Defendant's other similarly situated employees and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

19.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

20.     At all relevant times, Plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

21.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

22.     At all relevant times, the Corporate Defendant has used goods and materials produced in interstate commerce, and have employed two or more individuals who handled these goods and materials.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second

Causes of Action as a collective action under the FLSA on behalf of themselves and the following

collective:

> All persons employed by Defendants at any time since March 29,
> 2014 and through the entry of judgment in this case (the "Collective
> Action Period") who worked as non-management employees at
> Moscato Restaurant (the "Collective Action Members").

24.     A collective action is appropriate in this circumstance because Plaintiffs and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay wages for all hours worked, failing to pay the proper statutory

minimum wage, and failing to pay overtime premiums for all work performed in excess of forty

(40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members

did not receive the legally-required minimum wages for all hours worked and overtime premium

payments for all hours worked in excess of forty (40) hours per week.

25.     Plaintiffs and the Collective Action Members have substantially similar job duties

and are paid pursuant to a similar, if not the same, payment structure.

## NEW YORK CLASS ACTION ALLEGATIONS

26.     Pursuant to the NYLL, Plaintiffs bring their Third through Eighth Causes of Action

under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following

class:

> All persons employed by Defendants at any time since March 29,
> 2011 and through the entry of judgment in this case (the "Class
> Period") who worked as non-management employees at Moscato
> Restaurant (the "Class Members").

27.     The Class Members are readily ascertainable. The number and identity of the Class

Members are determinable from the records of Defendants. For purposes of notice and other

5

purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

28.     <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

29.     Upon information and belief, there are in excess of forty (40) Class Members.

30.     <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

     a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

     b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

     c.   whether Defendants paid Plaintiffs and the Class Members the tipped minimum wage;

     d.   whether Defendants properly notified Plaintiffs and the Class Members that they were taking the tip credit;

     e.   whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

     f.   whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for all hours worked in excess of forty (40) hours per workweek;

     g.   whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

h.   whether Defendants withheld a portion of Plaintiffs' and Class Members' tips and/or permitted management to share in the tip pool;

i.   whether Defendants failed to provide accurate wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

j.   whether Defendants failed to provide accurate wage statements to Plaintiffs and Class Members with each payment of wages as required by the NYLL;

k.   whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

l.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

31.     Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, were employees who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid the tip credit minimum wage, not notified that Defendants were taking the tip credit, not paid any wages at all for a significant number of hours worked each week, not paid overtime premium pay for all hours worked over forty (40) in a given workweek, not paid spread-of-hours premiums, not paid all tips to which they were entitled, and they did not receive wage notices or accurate wage statements.  If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

32.     Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of

7

a desire to help all Class Members, not merely out of a desire to recover their own damages.

33.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

34.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

35.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs and class members lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

36.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other current pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Restaurant

37.     At all relevant times, Defendants have been in the restaurant industry.  Specifically, Defendants own, operate and manage Moscato Restaurant, an Italian Restaurant in Scarsdale, New York.

38.     Upon information and belief, and according to corporate materials filed with the State of New York, Defendant M. Fava is the CEO of Baggio Ltd.

39.     The Individual Defendants are present at Moscato two or three days per week, where they oversee the business and generally take an active role in ensuring that the restaurants are run in accordance with their practices and procedures.

40.     According to Defendants' website, at https://moscatorestaurant.com, Moscato

Restaurant is part of "The Mario Fava Restaurant Group," which includes Chat American Grill, Lusardi's and Chat 19 American Grill.

**Plaintiff's Work for Defendants**

41.     Plaintiff Nieto was employed by Defendants as a runner from in or around May 2012 to on or about April 21, 2016 (the "Nieto Employment Period").

42.     For most of the Nieto Employment Period, Nieto worked between sixty-seven and one-half and seventy-five (67.5-71) hours per week.  He typically worked Tuesday and Thursday from approximately 10:00 am to between 10:00 pm and 10:30 pm, Wednesday from 4:00 pm to approximately 10:00 pm to 10:30 pm, Friday and Saturday from 10:00 am to between 11:00 pm and 12:00 am, and Sunday from 10:00 am to approximately 9:30 pm.  In particular, Mr. Nieto tended to stay until around 12:00 am midnight Fridays and Saturdays, since the restaurant was often busy on those days.

43.     For approximately three (3) months of the Nieto Employment Period, from February through mid-April 2016, Nieto worked seven (7) days per week and opened and closed the restaurant, as there were no other employees available to do so.  During this period, he typically worked an average of approximately eighty-nine (89) hours per week.

44.     At the beginning of the Nieto Employment Period, Nieto's hourly rate was five dollars ($5.00), plus tips.  In or around January 2016, his hourly rate increased to seven dollars and fifty cents ($7.50) plus tips.  He received credit card tips at the end of the week in his paycheck, and he was paid cash tips into the tip pool, which was distributed at the end of each shift.

45.     Although Nieto typically worked well in excess of sixty (60) hours per week, he was typically paid for between thirty-five and forty-five (35-45) hours per week.  As such, he typically was paid only a few hours of overtime premiums even though he typically worked

between twenty-five and thirty-five (27.5-35) hours of overtime and sometimes more, particularly from February through April 2016, when he worked approximately eighty-nine (89) hours per week.

46.     Plaintiff Nieto has received no wages whatsoever for work that he performed during his final week of work, from April 17, 2016 to April 21, 2016. When he inquired of his manager, Thomas Della Salla, about his final week's pay, Nieto was told by Mr. Della Salla that Defendants would not pay Nieto for his final week worked because Nieto was leaving.

47.     Plaintiff Dominguez was employed by Defendants as a food runner and coffee runner from in or around August 2014 to in or around January 2016 and again from on or about April 23, 2016 to on or about May 7, 2016 (altogether, the "Dominguez Employment Period").

48.     At the beginning of the Dominguez Employment Period through in or around June or July 2015, Dominguez typically worked between fifty and sixty (56-59) hours per week. Specifically, he typically worked from approximately 5:00 pm to between 10:30 pm and 11:00 pm Tuesdays through Thursdays, from approximately 10:00 am to between 12:00 am and 12:30 am on Fridays and Saturdays, and from approximately 10:30 am to between 9:30 pm and 10:00 pm on Sundays.

49.     Beginning in or around June or July 2015, Dominguez's schedule became more erratic; he typically worked three (3) single shifts and two (2) double shifts each week, for a total of between forty-one and forty-five (41-45) hours per week.

50.     At the beginning of the Dominguez Employment Period, Dominguez's hourly rate was five dollars ($5.00), plus tips.  In or around January 2016, his hourly rate increased to seven dollars and fifty cents ($7.50), plus tips.  Dominguez received credit card tips at the end of the week in his paycheck.

10

51.     Throughout the Dominguez Employment Period, particularly from the beginning of his employment through in or around June or July 2015, Plaintiff Dominguez was not paid for all hours worked.  Specifically, although between the beginning of his employment through June or July 2015, Plaintiff Dominguez typically worked in excess of fifty (50) hours per week, he was typically paid for between thirty-five and forty-five (35-45) hours per week.  Subsequently, he was typically paid for between twenty-five and forty (25-40) hours per week even though he typically worked in excess of forty (40) hours per week.

52.     Plaintiff Guzman was employed by Defendants as a busser and runner from in or around February 2016 to March 11, 2017 except approximately one (1) month between May and June (altogether, the "Guzman Employment Period").

53.     Between March and May Guzman worked as a busser; since June 2016, he worked as a runner.

54.     From the beginning of the Guzman Employment Period through in or around May 2016, Guzman worked between thirty-seven and one-half and forty (37.5-40) hours per week. Specifically, he typically worked from 4:00 pm to between 10:30 and 11:00 pm Sundays, from 5:00 pm to between 10:00 and 10:30 pm Mondays, from approximately 5:00 pm to between 11:00 pm and 11:30 pm Wednesdays and Thursdays, and from approximately 5:00 pm to between 12:00 am and 12:30 am Fridays and Saturdays.

55.     From in or around June 2016 through the end of his employment period, Guzman typically works between thirty-five and thirty-seven (35-37) hours per week.  Specifically, he typically works from 10:30 am to 9:30 pm or 10:00 pm Sundays, from 5:00 pm to 11:00 pm or 11:30 pm Wednesday, from 5:00 pm to between 12:00 am and 12:30 am Fridays, and from 10:30 am to between 9:30 pm and 10:00 pm Saturdays.  In addition, he also works approximately one

(1) shift per month on Wednesdays from 5:00 pm to 11:00 pm, for an additional six (6) hours per week.

56.     During the Guzman Employment Period, Guzman's hourly rate was seven dollars and fifty cents ($7.50) per hour, plus tips. He received credit card tips at the end of the week in his paycheck.

57.     Plaintiff Alarcon was employed by Defendants as a busser and runner from in or around January 2016 through the March 11, 2017 (the "Alarcon Employment Period").

58.     At the beginning of the Alarcon Employment Period, he worked as a busser for approximately three (3) weeks, then worked for a period of time as a runner, and is currently working as a busser.

59.     Plaintiff Alarcon's schedule typically consists of a five (5) day work week with the following schedule: Tuesdays and Wednesday from approximately 5:00 pm to between 10:30 pm and 11:00 pm, Thursdays from 5:00 pm to between 11:00 pm and 11:30 pm, and Fridays and Saturdays from 5:00 pm to 12:00 am and 12:30 am. In total, most weeks Alarcon works between approximately thirty-one to thirty-three and a half (33.5) hours per week.  On occasion Alarcon worked fewer shifts, depending on how many bussers were available, but typically he worked five (5) days per week.

60.     During the Alarcon Employment Period, Alarcon's hourly rate was seven dollars and fifty cents ($7.50) per hour, plus tips. He received credit card tips at the end of the week in his paycheck.

61.     At the beginning of the Nieto Employment Period, Defendants tracked Plaintiffs' and other employees' hours by referring to the schedule and did not provide any means for Mr. Nieto or other employees to accurately track their hours.  In or around 2013, the Company

introduced time cards for Plaintiffs Nieto and Dominguez and other employees to track their hours worked.  In or around June or July 2015, Defendants started using a POS system to track the hours of Plaintiffs and other employees.  Regardless of the system Defendants used for tracking hours, they consistently paid Plaintiffs for fewer hours than Plaintiffs actually worked.

62.     Servers, bussers and runners shared in a tip pool, which was divided among the tipped employees by a points system, with each position receiving a set number of "points."  In addition, bartenders and delivery workers sometimes received money from the tip pool.  Managers Tomaso and Franco also sometimes received a portion of employees' tips.

63.     When Plaintiffs worked in the evening, they were signed out of the POS system by a manager named Tomaso. The clock out typically coincided with the time that the kitchen closed, which was typically between 9:30 pm and 10:00 pm.  Plaintiffs understood that Tomaso was clocking out all employees at that time, with the exception of kitchen employees, who were not required to use the POS system.

64.     Plaintiffs typically were still working when Tomaso clocked them out.  On a Friday or Saturday night, they would typically work until between 12:00 am and 12:30 am.  During the rest of the week, they would still need to serve any remaining customers and perform side work such as picking up chairs and cleaning tables.

65.     In addition, Plaintiffs were frequently clocked out for a one (1) or two (2) hour lunch break even though they were typically able to take no more than thirty (30) minutes for a break and were required to be "on the floor," taking care of customers and sometimes performing side work during their break.  Plaintiffs would typically be clocked out for the purported lunch beginning at 3:00 or 4:00 pm, but would be working as runners or bussers for most of that time. For example, when Plaintiff Guzman works a double shift on Saturdays and Sundays, he is

instructed to clock out at approximately 3:00 pm but continue working until approximately 4:30 pm, at which time he is permitted to take a thirty (30) minute break and then clocks back in at 5:00 pm. Similarly, Plaintiff Dominguez was typically clocked out for a one (1) hour lunch at approximately 4:00 pm prior to 2016, when wages increased, and a two (2) hour break at approximately 3:00 pm after 2016.

66.     Plaintiffs, especially Nieto and Dominguez, were frequently instructed by managers Franco or Tomaso not to clock in at all for a shift they were working, particularly when they were approaching forty (40) hours of work in a week. Plaintiff Dominguez was told by Tomaso that Dominguez could work extra shifts if he wanted, but he would only receive tips and would not receive an hourly wage. Similarly, Plaintiff Guzman was aware that on at least two (2) occasions, both Saturdays, Tomaso clocked him out approximately three (3) hours after Guzman began his shift. When Guzman inquired as to why Tomaso clocked him out, Tomaso informed Guzman that Guzman "had made too many hours already" and told Guzman that he could work the remainder of the shift but would receive tips only and not his hourly rate.

67.     Manager Franco often scheduled himself to work as a server for a given shift. During these shifts, he would wait on one or two (1-2) tables but for the most part would perform his managerial duties of supervising Plaintiffs and other employees and greeting customers. At the end of these shifts, he would take money from the tip pool at the same rate of the other servers.

68.     When there were large groups and parties at the restaurant, manager Tomaso frequently instructed servers that they were required to give him a portion of their tips. Plaintiff Alarcon observed that this happened particularly frequently during the holiday season, that Tomaso received a portion of employees' tips.

69.     Plaintiffs were paid weekly via a paycheck, which they received Wednesdays, Thursdays or Fridays from Franco or Tomaso.  While their wages were accompanied by a paystub, the paystub contained an inaccurate calculation of their wages worked, showing far fewer hours than they actually worked, particularly when they had worked in excess of forty (40) hours per week.

70.     Defendants did not provide Plaintiffs with written notice in their native language, Spanish, that Defendants were taking the tip credit in calculating their hourly rate, nor did Defendants provide to Plaintiffs a wage notice in their native language, Spanish, setting forth their hourly rates, Defendants' taking of the tip credit, or any deductions that would be subtracted from their wages.  Plaintiffs Nieto and Dominguez requested a copy of the wage notice to take home, so they could review it with someone who spoke English, but both were denied a copy or translation of the wage notice.

71.     Defendants also required Plaintiffs to sign cash tip reports showing far fewer tips than they actually received.  Plaintiff Alarcon was frequently required to sign multiple reports on the same day and was told by Tomaso the amounts to write in.  Plaintiff Alarcon did not understand what he was signing or the reason he was being told to sign the reports.

72.     Throughout Plaintiffs' employment, Plaintiffs were paid the "tipped" minimum wage but, since Defendants did not pay Plaintiffs for all hours worked, pay overtime premiums or notify Plaintiffs that they were taking the tip credit, and furthermore permitted a manager to participate in the tip pool, Plaintiffs were entitled to receive the full statutory minimum wage.

73.     Plaintiffs did not receive any wages whatsoever, let alone overtime premiums consisting of one and one-half (1.5) times their regular hourly rates, for a substantial amount of

hours they worked each week or spread-of-hours premiums consisting of one (1) extra hour of minimum wage when they worked in excess of ten (10) hours per day, which they frequently did.

**Defendants' Unlawful Corporate Policies**

74.    Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including improperly paying the tip credit minimum wage without notifying Plaintiffs that Defendants were taking the tip credit and failing to pay minimum wage, overtime premiums and spread-of-hours premiums.

75.    Notwithstanding the fact that that Plaintiffs and other Class Members frequently worked more than ten (10) hours in a given day, Defendants failed to pay them spread-of-hours premiums equal to an additional hour of minimum wage for each day working in excess of ten (10) in a given day.  Defendants' failure to pay Plaintiffs and Class Members spread-of-hours premiums was a corporate policy that applied to all of Defendants' employees working shifts of more than ten hours in one day and/or split shifts.

76.    Plaintiffs are aware that other employees of Defendants, who similarly worked in excess of forty (40) hours per week during the Class Period, were similarly paid less than the statutory minimum wage, did not receive any wages at all for many hours worked each week, and did not receive overtime premiums of one and one-half (1.5) times their hourly rate for all hours worked over forty (40) hours per week. Defendants' failure to pay Plaintiffs and Class Members the correct statutory minimum wage for all hours worked and overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week was a corporate policy of Defendants, which applied to all of their hourly employees throughout the relevant period.  Defendants shaved the hours of Plaintiffs and Class Members by not paying them any wages for certain hours and shifts worked and by clocking them out while they were still working.

77.     Defendants did not provide written notice to Plaintiffs or the Class Members in their native language whether they were relying upon the tip credit in calculating their hourly rate.

78.     Because Defendants violated the requirements for taking the tip credit, Defendants were not entitled to pay Plaintiffs and the Class Members the New York "tipped" minimum wage and instead were obligated to pay Plaintiffs and the Class Members the full statutory minimum wage.

79.     Plaintiffs are aware that other employees of Defendants similarly received inaccurate wage statements with their payment of wages.  Defendants' failure to provide accurate wage statements in accordance with the requirements of the NYLL was a corporate policy that applied to all hourly employees throughout the relevant time period.

80.     Defendants did not provide Plaintiff or Class Members with proper wage notices at the time of hire or by February 1 of each year.

81.     Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

82.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

84.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

85.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  By failing to pay Plaintiffs and the Collective Action Members for all hours worked, failing to pay overtime premiums and failing to notify Plaintiffs and the Collective Action Members that they were relying on the tip credit in calculating employees' hourly rates, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage.  Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

86.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

87.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

88.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

89.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

90.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked in violation of the NYLL and regulations promulgated thereunder.

92.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  By failing to pay Plaintiffs and the Class Members for all hours worked, failing to pay overtime premiums and failing to notify Plaintiffs and the Class Members that they were relying on the tip credit in calculating employees' hourly rates, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage. Therefore Plaintiffs and the Class Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Class Members)**

93.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

95.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

96.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

97.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in

violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

98.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

99.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

100.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

101.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

102.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

103.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

104.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as

provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### EIGHTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNLAWFUL WITHHOLDING OF GRATUITIES
**(Brought on Behalf of Plaintiffs and the Class Members)**

105.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

106.     Defendants have willfully failed to compensate Plaintiff and the Class Members for all gratuities earned by permitting a manager to share in the tip pool, in violation of § 196-d of the New York Labor Law. Accordingly, Defendants are required to compensate Plaintiff and the Class Members for all gratuities withheld by Defendants.

107.     Due to the Defendants' New York Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid gratuities, damages for unreasonably delayed payment of wages liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et al.*, 196-d.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action

by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.    An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.    An award of actual and liquidated damages for the unlawfully withheld tips and tips taken by managers;

j.  Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b.

k.  Two hundred and fifty ($250) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand ($5,000) dollars per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

l.  An award of prejudgment and post-judgment interest;

m.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.  Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      March 29, 2017

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the putative collective and class*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Moscato Restaurant, and Lusardi Fava Management, LLC y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
*Emiliano Nieto Zapeda.*
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Moscato Restaurant, and Lusardi Fava Management, LLC y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío.  Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_Alan y Dominguez Ballares_
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Moscato Restaurant, and Lusardi Fava Management, LLC y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío.  Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_____
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Moscato Restaurant, and Lusardi Fava Management, LLC y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío.  Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


Sergio H. Alarcón M.
_____
Firma

Sergio H. Alarcón Mendoza.
_____
Nombre Escrito